D. D. Query and Elsie Query v. Commissioner.
Query v. Commissioner
Docket No. 39115.
United States Tax Court
T.C. Memo 1954-160; 1954 Tax Ct. Memo LEXIS 85; 13 T.C.M. (CCH) 891; T.C.M. (RIA) 54266; September 28, 1954, Filed *85 1. In 1946, petitioner D. D. Query created two trusts, one each for his son and his daughter, both of whom were minors of the ages of 9 and 11 years, respectively, at the time of the creation of the trusts. He transferred to the trusts 83 shares of stock each in Elizabethton Cinder Blocks, Inc. The trusts were irrevocable and were to terminate when the respective beneficiaries reached the age of 35 years. The income of the trusts was to be accumulated and added to corpus and upon the termination of the trusts, accumulated income and corpus were to be turned over to the beneficiaries. Petitioner, as trustee, was given broad powers of management but he reserved no power to alter or change the trusts or the respective shares of the beneficiaries in the income or the corpus. In 1948, the corporation declared a dividend and on February 14, 1949, paid such dividend to petitioner on the stock which he owned personally and on the stock which he owned as trustee for his two minor children. Held, the income of the trusts was not taxable to petitioner. 2. On December 31, 1948, the corporation declared a dividend payable to stockholders of record as of that date. The dividend was to be paid *86 in January 1949. The dividends to the respective stockholders were actually paid by check dated February 14, 1949. Petitioner returned his personal dividend for taxation on his 1948 return. However, in an amended petition he alleged that he erred in so doing and that the dividend is taxable in 1949. Held, the dividend was not constructively received by petitioner in 1948 and inasmuch as petitioners are on a cash basis, the dividend is taxable to them in 1949. C. Robert Mathis, Esq., and George D. Webster, Esq., for the petitioners. Paul E. Waring, Esq., for the respondent. *87 BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies in petitioners' income tax as follows: Year
Amount of Deficiency
1948
$8,237.55
1949
748.42
The main adjustment for 1948 is adding to the income which petitioners reported for that year: "(a) Dividends increased $16,600.00." This adjustment is explained in the deficiency notice, as follows: "(a) It is held that the income of the Fred Query and Elsie [Elsa] Joan Query trusts for the year 1948 is taxable to you." The other minor adjustments are not contested by petitioners. They do contest the principal adjustment, however, and contend that the trusts which were created for their two children were valid irrevocable trusts and that the income of the trusts was taxable to the trusts and not to the petitioners. Petitioner D. D. Query was the trustee of the two trusts and his minor son and daughter were the sole beneficiaries of the trusts. For the year 1949, the deficiency is due to adjustments and although petitioners assigned errors as to them, they abandoned these assignments of error at the hearing and conceded that the Commissioner was correct *88 in these adjustments. In their amended petition petitioners have an assignment of error which was not in the original petition. That assignment of error is to the effect that the Commissioner erred in treating as taxable income a dividend of $8,400 received by the petitioners from Elizabethton Cinder Blocks, Inc., in 1949, as income of petitioners for 1948 instead of income for the taxable year 1949. Respondent denies that he erred in treating the dividends as income for 1948 but alleges in the alternative that if the Tax Court should hold that the dividends are taxable to petitioners in 1949, rather than in 1948, that the deficiency for 1949 should be increased accordingly. Respondent makes claim for such increased deficiency pursuant to the provisions of section 272(e) of the Internal Revenue Code of 1939. Findings of Fact Petitioners are individuals residing in Marion, Virginia. Their federal income tax returns for the calendar years 1948 and 1949 were filed with the Collector of Internal Revenue for the District of Virginia. Petitioners filed these returns on a cash method of accounting. D. D. Query will sometimes hereinafter be referred to as petitioner. Petitioners' *89 two children are one son, Frederick D. Query and one daughter, Elsa Joan Query. On May 31, 1946, Frederick was 9 years of age and Elsa Joan was 11 years of age. On May 31, 1946, petitioner, in order to provide economic security for his two children, executed and delivered an agreement of trust between himself as settlor and himself as trustee, one in favor of his son and one in favor of his daughter. And in accordance with its terms, he transferred to himself, as trustee, 166 shares of common stock of Elizabethton Cinder Blocks, Inc., a Tennessee corporation. By this instrument he created two separate trusts, each of which received 83 shares of the stock. Elizabethton Cinder Blocks, Inc., sometimes hereinafter referred to as the corporation, with its principal office at Elizabethton, Tennessee, was incorporated on November 30, 1945. It was engaged in the manufacture of brick, block and shale products. Of the total of 500 shares of common stock issued and outstanding, D. D. Query held 84 shares, D. D. Query, trustee for Frederick D. Query, held 83 shares, and D. D. Query, trustee for Elsa Joan Query, held 83 shares. The remainder of the shares was owned by 6 other stockholders. *90 The trusts created were identical in form and were declared to be for the exclusive use and benefit of the two children. The trust indenture contained the following provisions: "Second: This trust for Frederick D. Query shall continue until he reaches the age of thirty-five (35) years and the trust for Elsa Joan Query shall likewise continue until she reaches the age of thirty-five (35) years; the Trustee shall retain said stock, except as hereinafter set forth, together with all dividends paid thereon until the parties of the third part reach the age of thirty-five (35) years as aforesaid at which time said Trustee shall transfer and deliver the said stock together with accrued dividends to the said parties of the third part. "Third: The Trustee is hereby vested with the full discretion in the management and control of said stock until the said parties of the third part reach the age of thirty-five (35) years, respectively, and receive the transfer and delivery of his or her stock, shall vote the same at any and all corporate meetings or designate proxies therefor; and the said Trustee may at any time, when he deems advisable and for the best interest of the said parties of the *91 third part, or either of them, sell said stock or any portion thereof at such price as he may deem advisable, and shall reinvest the proceeds thereof in other stocks, bonds, securities, or real estate, as he may see fit and proper, consistent with the best interests of the said parties of the third part or either of them; and the said Trustee may from time to time, as he deems it advisable, substitute other shares of stock in other corporations of equal value for the stock hereby transferred, which stock so substituted shall be held and administered in trust under the provisions hereof in like manner as if said stock had not been substituted, it being intended that the trust for each of these parties of the third part is irrevocable but that the said Trustee shall have the fullest discretion in the management thereof for the greatest benefit to the said beneficiaries. * * *
"Sixth: It is expressly understood that a separate trust is hereby created for each of the aforesaid parties of the third part and that the transfer and delivery of the said stock together with proceeds thereon, or any stock or securities substituted therefor to one of the parties of the third part who has *92 then reached the age of thirty-five (35) years shall not impair the trust as it may affect the other party of the third part not having reached that age. "Seventh: The said Trustee shall receive and receipt for, hold and keep in trust, for the said parties of the third part, respectively, all dividends or other income from said stock or any securities substituted therefor, and shall invest, or reinvest, the same from time to time as he may deem advisable for the best interests of the said parties of the third part. "Eighth: In the event of the death of either of the parties of the third part before reaching the age of thirty-five (35) years, the stock held by the Trustee under the terms of this trust for the benefit of such child shall be held by the Trustee until said beneficiary would have been thirty-five (35) years of age and at such time the Trustee shall then distribute the share of such beneficiary to his or her heirs at law or devisees, and the trust herein created shall remain in full force and effect until such beneficiary would have reached the age of thirty-five (35) years had the beneficiary lived." The trust indenture in its entirety is incorporated herein by reference. *93 The gifts coincident with the execution of the trust instrument on May 31, 1946, were duly reported in the federal gift tax return of the petitioner for the year 1946, but no gift tax was shown to be due by the return. A dividend of $100 per share of common stock was paid on February 14, 1949, by Elizabethton Cinder Blocks, Inc., to the two trusts and to the other stockholders. Payment of the allocable dividends to petitioner, as trustee, ($16,600) was made by two checks dated February 14, 1949. One check for $8,300 was payable to D. D. Query, trustee for Frederick D. Query, Marion, Virginia. Another check for $8,300 was payable to D. D. Query, trustee for Elsa Joan Query, Marion, Virginia. Each of the foregoing checks contained a typewritten statement: "Dividends Declared December 31, 1948, 83 Shares at $100.00 $8,300.00." The dividend checks of February 14, 1949, were deposited in the personal account of petitioner at the Marion National Bank, Marion, Virginia, on February 17, 1949. A note was executed at this time in the amount of $16,600, payable to the trust. The petitioner filed fiduciary income tax returns for the year 1948 as trustee for Frederick D. Query and Elsa Joan *94 Query, reporting the dividends of February 14, 1949, and paying the allocable tax for each trust, $1,765.64. These returns were filed on a cash method of accounting. On August 9, 1949, petitioner executed notes payable on demand, one of which was payable by D. D. Query, trustee, to the order of Frederick Delmas Query, and the other note was payable by D. D. Query, trustee, to the order of Elsa Joan Query and were drawn in the respective amounts of $6,534.36, representing: Issued in the name
Issued in the name
of D.D. Query,
of D. D. Query,
Trustee for
Trustee for
Frederic D. Query
Elsa Joan Query
Dividend paid on February 17, 1949
$8,300.00
$8,300.00
Less: Federal income tax paid by checks dated April 6,
1949, drawn on the personal account of D. D. Query
1,765.64
1,765.64
Face amount of notes executed by D. D. Query and
retained by him in his safe deposit box
$6,534.36
$6,534.36 These notes on their face did not provide for the payment of interest but under the laws of Virginia they bore interest from date at the rate of 6 per cent per annum. On or about April 7, 1953, at the suggestion of petitioner's counsel, there was typed on the *95 face of each of these notes dated August 9, 1949, the phrase "With interest at 6% per annum." No portion of either principal or interest was paid by the petitioner on these notes prior to April 7, 1953. On that date all principal and interest on the notes were paid. At all times while the loans were unpaid, the net worth of petitioner was substantially in excess of the amount of the loans. The petitioners did not include as taxable income to them on their 1948 or their 1949 income tax returns any portion of the dividends paid by the corporation on shares of stock of the corporation registered in the name of D. D. Query, trustee for Frederick D. Query, and D. D. Query, trustee for Elsa Joan Query. During the period May 31, 1946 to February 7, 1951, the common stock of Elizabethton Cinder Blocks, Inc., constituted the corpora of the two trusts. The petitioner, as trustee, on February 7, 1951, received the allocable portion of the assets of the corporation upon liquidation on behalf of the two trusts. These assets were then contributed to Appalachian Shale Products Company, a partnership formed on February 7, 1951; the trusts had the same proportionate interests in this partnership *96 as in the predecessor corporation. The assets of Appalachian Shale Products Company were sold to General Share Products Company, a Delaware corporation, on July 1, 1952. The percentage interests of the trusts in the proceeds of this sale were the same as in the prior corpora of the trusts. No books or records were kept by D. D. Query for the two trusts referred to in the above findings prior to December 31, 1950. The balance sheets of the corporation as of December 31, 1947, December 31, 1948, and December 31, 1949, as shown on the corporation's income tax returns filed in the name of Elizabethton Cinder Blocks, Inc., disclose the following assets and liabilities: 12/31/47
12/31/48
12/31/49
Cash
$ 26,549.93
$ 75,860.03
$ 90,003.79
Notes and accounts receivable
15,569.19
15,413.19
19,572.95
Inventories
17,157.73
16,734.16
15,043.92
Capital assets less depreciation
79,789.07
68,370.84
58,258.64
Land
2,250.00
2,250.00
2,250.00
Other assets
1,939.39
1,558.36
2,005.15
Total assets
$143,255.31
$180,186.58
$187,134.45
Accounts payable
$ 23,208.00
$ 2,581.86
$ 18,382.37
Accrued expenses (taxes)
16,979.71
30,060.88
29,017.31
Bank overdraft
4,570.48
Dividends payable
50,000.00
Capital stock
50,000.00
50,000.00
50,000.00
Earned surplus
48,497.12
47,543.84
89,734.77
Total liabilities
$143,255.31
$180,186.58
$187,134.45
*97 The ledger sheet of Elizabethton Cinder Blocks, Inc., captioned "Accounts Payable - Special (For Dividends)," discloses the following: 1948
Debit
Credit
Dec. 31
D. D. Query
$ 8,400.00
D. D. Query, Trustee for Frederick D. Query
8,300.00
D. D. Query, Trustee for Elsa Joan Query
8,300.00
C. C. Lincoln, Jr.
12,400.00
Leon D. BeVille
100.00
J. D. Lincoln
3,200.00
J. D. Lincoln, Trustee for Joan Dickey Swingle
3,100.00
J. D. Lincoln, Trustee for Charlotte Susan Lincoln
3,100.00
J. D. Lincoln, Trustee for Mildred Boyd Lincoln
3,100.00
Total
$50,000.00
1949
Feb. 28
$50,000.00
In the actual management of the trusts, petitioner performed the following acts: He accepted the trust res as trustee, deposited the securities in his safe deposit box, collected and reported the income, supervised the keeping of books after such books were set up which was not until after December 31, 1950, had audits made by public accountants, opened bank accounts, signed checks for necessary disbursements, and voted the capital stock owned by the trusts. Bank accounts for the two trusts were opened at The Marion National *98 Bank, Marion, Virginia, on June 17, 1952. The opening deposits in these accounts were in the following amounts: Frederick D. Query Trust
$3,000.00
Elsa Joan Query Trust
3,000.00 After the trust accounts were opened the income from the trust corpora was deposited in the proper trust account and all investments and payments of trust funds were made by checks drawn on these accounts. All trust income other than the dividends of February 14, 1949, was deposited in these two trust accounts. No disbursements have been made by the trusts except the loan in 1949 to D. D. Query and the payments of taxes in 1949, 1952, and 1953. The income tax return of the corporation for the calendar year 1948, which was prepared on an accrual basis, contains balance sheets of the assets and liabilities of that corporation for the beginning and for the end of the taxable year. This balance sheet has listed as a liability at the end of the taxable year "Dividends Payable $50,000.00." Also in Schedule M "Reconciliation of Net Income and Analysis of Earned Surplus and Undivided Profits" the following is shown: "1. Total distributions to stockholders charged to earned surplus during the *99 taxable year: (a) Cash Payable Jan. '49
$50,000.00"
The corporation had sufficient cash on hand as of December 31, 1948, to pay the dividend of $50,000 declared on that date if it had been made payable on that date. D. D. Query, President of the corporation, gave all instructions with respect to the recording and payment of this dividend. Opinion BLACK, Judge: The pleadings raise two issues for us to decide: 1. Is the income of two trusts created by the petitioner for the benefit of his two minor children taxable to the petitioners as contended by respondent, or is such income taxable to the trusts as contended by the petitioners. 2. Is the income received by petitioner on shares of stock of the corporation issued in his name and income received on shares of stock of that corporation issued in the names of D. D. Query, trustee for Frederick D. Query and D. D. Query, trustee for Elsa Joan Query, his two minor children, taxable to the petitioners in 1948 on the doctrine of constructive receipt, as contended by respondent, or are these amounts taxable to the petitioners in 1949 when actually paid to D. D. Query, he and his wife Elsie having filed their income *100 tax returns for both years on the cash receipts and disbursements basis. We shall take up these issues in the order of their statement. Issue 1. Respondent contends that the income of the two trusts which petitioner created for his two minor children, May 31, 1946, is taxable to petitioners under section 22(a) of the Internal Revenue Code of 1939. He bases this contention on Helvering v. Clifford, 309 U.S. 331, and Regulations 111, section 29.22(a)-21(e), printed in the margin. [1]
*101 The so-called Helvering v. Clifford regulations of which the one relied upon in this proceeding is a part, were by their express terms made applicable to taxable years beginning after December 31, 1945. Therefore, the regulations apply to the years which we have before us in this proceeding. Thus the issue here is narrowed as to whether the petitioner retained the requisite administrative control of the trusts created in order to come within the purview of Helvering v. Clifford, supra, and the regulations which the Treasury has promulgated bearing upon the Clifford case. In T.D. 5567, 1947-2 C.B. 9 which says "Regulations 111 amended - Taxability of income of certain trusts," it is further stated: "These amendments are designed to set forth the application in certain cases of the principles enunciated in Helvering v. Clifford, * * * and related cases." Then follow the amendments to the regulations, one of which is 29.22(a)-21(e) printed in the margin. It is that regulation and the Supreme Court's decision in the Clifford case upon which respondent relies in support of his determination. It is the position of petitioner that having created irrevocable *102 trusts under which the beneficiaries were definitely fixed and could not be changed and under which the grantor retained no single element of the controlling "bundle of rights" with respect to the trust res or income therefrom, the income from those trusts is not taxable to the petitioner under Helvering v. Clifford, supra, and the regulations upon which the Commissioner relies. In deciding the issue which has been raised, in the language of the Supreme Court, the answer "must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation." In making this analysis, we think it should first be noted that neither of the two trusts was a short-term trust. They were both for long terms. We think that the important factor in the instant case is that the settlor did definitely and irrevocably part with title and all power of subsequent distribution of that portion of his estate which became the trust res. The trust instruments make complete and specific provisions for the disposition of all income and do not leave in the trustee any discretion as to how the income shall be distributed. Moreover, the trust indentures provide *103 for the final distribution of corpus, including all accumulated income. The settlor retained no power to change or alter the status of the trusts as to either income or corpus. Respondent in his brief lays considerable emphasis on paragraph three of the trust instruments. This paragraph, in our opinion, provides for the usual and ordinary management powers of a trustee; we see nothing unusual in them. The courts have agreed that a trustee is required to exercise his management powers in the interest of the beneficiary. The mere fact that the grantor has retained certain broad powers does not subject him to tax. See Cushman v. Commissioner, 153 Fed. (2d) 510. One of the facts upon which respondent places considerable emphasis in his brief as to why the rule of the Clifford case should apply in the instant case is that petitioner-settlor deposited the dividend checks received February 14, 1949, from Elizabethton Cinder Blocks, Inc., to his personal account, and thus violated his fiduciary duty by commingling the trust funds with his own account. While it is true that petitioner did deposit these dividend checks which were trust funds in his own personal account, the facts *104 show that later on in the same year petitioner executed demand notes for the amounts of the deposits (less taxes paid). Demand notes bear 6 per cent interest in Virginia. Kent v. Kent, 69 Va. 840. Upon advice of counsel, the amounts, with 6 per cent interest, were repaid to the trust accounts on April 7, 1953. We do not think that these facts that petitioner borrowed the trust funds for his own use for a period of time but repaid the borrowing in full with interest would be sufficient cause, when all other facts are considered, for us to hold that the income of the trusts was taxable to petitioner. In Litta Matthaei, 4 T.C. 1132, we stated: "There was laxity in the administration of the trusts. But the interests of the trust beneficiaries were not prejudiced thereby." We further said in that case: "While it may have been violative of the grantors' fiduciary obligations, if not of the laws of the State of Michigan regulating the administration of trusts, for the trustees to commingle the trust funds with their personal funds as they did prior to the establishment of the trust accounts, and on occasions to borrow or appropriate trust funds for their own *105 use, it does not follow that the trusts were without substance. The final accounting of the trust funds after the death of Emma in 1943 found the trust funds all intact. The actual accretions to the original corpora of the trusts in the form of dividends and interest were readily ascertainable and all of such income has been accounted for in the trust portfolios and bank accounts." Under such circumstances as the foregoing, we concluded our opinion in Litta Matthaei, supra, by saying: "We think that Helvering v. Clifford, supra, and like cases, where the grantors retained powers substantially equivalent to ownership of the trust assets, are not controlling in circumstances like those in the instant proceedings." In Jones v. Norris, 122 Fed. (2d) 6, the grantor retained in his own bank account some of the proceeds of the sale of trust property, but as he kept an accurate account with the trustee of the amount which he owed the trust, he was held not to have any substantial incidents or attributes of ownership making him taxable under the Clifford doctrine. Taking into account the provisions of the trust indentures and the facts connected *106 with the administration of the trusts by petitioner-trustee as disclosed by the evidence, we conclude that the income of the trusts is not taxable to petitioner under Helvering v. Clifford, supra, and Regulations 111, section 29.22(a)-21(e). On this issue we sustain petitioner. Issue 2. Doctrine of Constructive Receipt. As we have held in deciding Issue 1 that the dividends of the corporation paid to the trusts in 1949 were not taxable to petitioner, we have no authority to decide in what year the dividends were taxable to the trusts. We do not have the trusts before us in this proceeding. We do have to decide the issue as to petitioners because the issue has been properly raised by the pleadings. A dividend of $8,400 was paid by the corporation to petitioner on February 14, 1949. Petitioners in their joint return reported this dividend for tax on their return for 1948. The Commissioner in his determination of the deficiency for 1948 did not disturb the action of petitioners in reporting the dividend as income received in 1948. However, petitioners by appropriate assignment of error in their amended petition have raised the issue that they erred in reporting the *107 dividend in 1948 and that it should have been reported in 1949. The Commissioner denies that petitioners erred in reporting the dividend for tax in 1948 but, in the alternative, pleads that if we should hold that the dividend is taxable to petitioners in 1949, then, in such event, he is entitled to an increased deficiency for 1949 to be computed under Rule 50. It is undisputed that the dividend was actually paid by check to petitioner on February 14, 1949. The Commissioner, however, contends that petitioner constructively received the dividend in 1948, that petitioners correctly reported it on their joint return for that year and that their manner of reporting it should not be disturbed. The Commissioner relies upon Regulations 111, sections 29.42-2 and 29.42-3, printed in part in the margin. [2]
*108 The minute book of the corporation was produced at the hearing but it contained no dividend resolution. D. D. Query, petitioner, who was president of the corporation testified that there must have been a dividend resolution but he could not be sure. He thinks there was one but could not remember the date. We conclude from all the evidence in the record that there must have been some kind of a dividend resolution, either oral or written, adopted by the directors of the corporation on December 31, 1948, and that it provided for a dividend of $100 a share to the stockholders of record as of that date. We also conclude that the dividend was not to be paid until some time in January 1949. The income tax return of the corporation for the calendar year 1948 which was filed on an accrual basis was introduced in evidence by respondent and shows as a liability dividends payable, $50,000. This return of the corporation, after disclosing the dividend of $50,000 as a liability, also contains the following statement: "1. Total distributions to stockholders charged to earned surplus during the taxable year: "(a) Cash Payable Jan. '49 $50,000.00" It, therefore, seems reasonably clear to *109 us that the dividend of the corporation, although declared on December 31, 1948 was not to be paid until in January of 1949. The uncontradicted evidence shows that the dividend was actually paid to stockholders on February 14, 1949. Because of these facts and circumstances, under the doctrine of the Supreme Court in Avery v. Commissioner, 292 U.S. 210, we hold against the Commissioner's contention that petitioner constructively received his dividend of $8,400 in 1948. Petitioners are on the cash basis and the dividend is taxable to them in 1949. It is true that the cash position of the corporation would have enabled it to have paid the dividend in 1948, but taking into consideration all the evidence in the case, we conclude there was no intention to pay it prior to early in 1949. Doubtless this will result in an increased deficiency for 1949 and respondent's prayer for an increased deficiency for that year will be granted. Decision will be entered under Rule 50. Footnotes
1. Sec. 29.22(a)-21: Trust income taxable to the grantor as substantial owner thereof: * * *
(e) Administrative control. - Income of a trust, whatever its duration, is taxable to the grantor where, under the terms of the trust or the circumstances attendant on its operation, administrative control is exercisable primarily for the benefit of the grantor rather than the beneficiaries of the trust. Administrative control is exercisable primarily for the benefit of the grantor where - (1) a power exercisable by the grantor, or any person not having a substantial adverse interest in its exercise, or both, whether or not in the capacity of trustee, enables the grantor or any person to purchase, exchange or otherwise deal with or dispose of the corpus or the income therefrom for less than an adequate and full consideration in money or money's worth; or (2) a power exercisable by the grantor, or any person not having a substantial adverse interest in its exercise, or both, whether or not in the capacity of trustee, enables the grantor to borrow the corpus or income, directly or indirectly, without adequate interest in any case, or without adequate security except where a trustee (other than the grantor or spouse living with the grantor) is authorized under a general lending power to make loans without security to the grantor and other persons and corporations upon the same terms and conditions; or (3) the grantor has directly or indirectly borrowed the corpus or income and has not completely repaid the loan, including any interest, before the beginning of the taxable year; or (4) any one of the following powers of administration over the trust corpus or income is exercisable in a nonfiduciary capacity by the grantor, or any person not having a substantial adverse interest in its exercise, or both; a power to vote or direct the voting of stock or other securities, a power to control the investment of the trust funds either by directing investments or reinvestments or by vetoing proposed investments or reinvestments, and a power to reacquire the trust corpus by substituting other property of an equivalent value. If a power is exercisable by a person as trustee, it is presumed that the power is exercisable in a fiduciary capacity primarily in the interests of the beneficiaries. Such presumption may be rebutted only by clear and convincing proof that the power is not exercisable primarily in the interests of the beneficiaries. If a power is not exercisable by a person as trustee, the determination of whether such power is exercisable in a fiduciary or a nonfiduciary capacity depends on all the terms of the trust and the circumstances surrounding its creation and administration. For example, where the trust corpus consists of diversified stocks or securities of corporations the stock of which is not closely held and in which the holdings of the trust either by themselves or in conjunction with the holdings of the grantor are of no significance from the viewpoint of voting control, a power with respect to such stocks or securities held by a person who is not a trustee will be regarded as exercisable in a fiduciary capacity primarily in the interests of the beneficiaries. Where the trust corpus consists of stock or securities of a closely held corporation, such a power may or may not, depending upon the facts, be considered exercisable in a fiduciary capacity. The mere fact that a power exercisable by the trustee is described in broad language does not indicate that the trustee is authorized to purchase, exchange, or otherwise deal with or dispose of the trust property or income for less than an adequate and full consideration in money or money's worth, or is authorized to lend the trust property or income to the grantor without adequate interest. On the other hand, such authority may be indicated by the actual administration of the trust. T.D. 5567, 1947-2 C.B. 9↩.
2. Sec. 29.42-2. Income Not Reduced to Possession. - Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. A book entry, if made, should indicate an absolute transfer from one account to another. * * * Sec. 29.42-3. Examples of Constructive Receipt. - * * * Dividends on corporate stock are subject to tax when unqualifiedly made subject to the demand of the shareholder. If a dividend is declared payable on December 31 and the corporation intended to and did follow its practice of paying the dividends by checks mailed so that the shareholders would not receive them until January of the following year, such dividends are not considered to have been unqualifiedly made subject to the demand of the shareholders prior to January, when the checks were actually received. * * *↩